Richard D. McCune (SBN #132124)
rdm@mccunewright.com
Jae (Eddie) K. Kim (SBN #236805)
jkk@mccunewright.com
**McCuneWright llp**
2068 Orange Tree Lane, Suite 216
Redlands, California  92374
Telephone:  (909) 557-1250
Facsimile:  (909) 557-1275

Joseph G. Sauder (PA #82467)*
JGS@chimicles.com
Matthew D. Schelkopf (PA #89143)*
MDS@chimicles.com
Benjamin F. Johns (PA #201373)*
BFJ@chimicles.com
Joseph B. Kenney (PA #316557)*
JBK@chimicles.com
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, Pennsylvania  19041
Telephone:  (610) 642-8500
Facsimile:  (610) 649-3633
*Pro Hac Vice* applications to be submitted

Attorneys for Plaintiffs and Putative Class

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| APRIL LAX, SONYA SANDERS, SHANNON NORRIS, GREG JONES, DOUGLAS MEDLAND, and KIMBERLY BUSCHMANN on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOYOTA MOTOR CORPORATION and TOYOTA MOTOR SALES, U.S.A., INC., and DOES 1 though 10, Inclusive,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1. Violation of the California Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq*.);<br>2. Violation of California Unfair Competition Laws (Cal. Bus. & Prof. Code § 17200); And Unfair Business Practices Statutes of Florida, Washington, New York, and New Jersey;<br>3. Breach of Express Warranty;<br>4. Common Law Fraud;<br>5. Breach of the Covenant of Good Faith and Fair Dealing;<br>6. Breach of California Implied Warranty Violations (Cal. Civ. Code §§ 1792, 1791.1, *et seq*.)<br><br>**DEMAND FOR JURY TRIAL** |

**PLAINTIFFS' CLASS ACTION COMPLAINT AND JURY DEMAND**

Plaintiffs April Lax, Sonya Sanders, Shannon Norris, Greg Jones, Douglas Medland, and Kimberly Buschmann (collectively, "Plaintiffs"), bring this action against Defendants Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively "Defendants" or "Toyota"), by and through their attorneys, individually and on behalf of all others similarly situated, and allege as follows:

**INTRODUCTION**

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of current and former Toyota and Scion vehicle owners and lessees with defective 2AZ-FE engines in the following model years ("MY"): MY 2007-2011 Toyota Camry HV, MY 2007-2009 Toyota Camry, MY 2009 Toyota Corolla, MY 2009 Toyota Matrix, MY 2006-2008 Toyota RAV4, MY 2007-2008 Toyota Solara, MY 2007-2009 Scion tC, and MY 2008-2009 Scion xB (the "Class Vehicles").[1]

2.      This action arises from Defendants' failure, despite their longstanding knowledge of a material design defect, to disclose to Plaintiffs and other consumers that the Class Vehicles are predisposed to an excessively high rate of engine oil consumption (the "Oil Consumption Defect").  This defect – which typically manifests itself during and shortly after the limited warranty period has expired – will inevitably cause the Class Vehicles to prematurely burn off and/or consume abnormal and excessive amounts of engine oil.

3.      Significantly, the existence of the Oil Consumption Defect poses a safety risk to the operator and passengers of the vehicle because it prevents the engine from maintaining the proper level of engine oil, and causes an excessive amount of engine oil consumption that can neither be reasonably anticipated nor predicted.  Further, the Oil Consumption Defect can cause engine failure while the Class Vehicles are in operation at any time and under any driving condition or speed.  This exposes the driver and occupants of the Class Vehicles, as well as others who share the road with them, to an increased risk of accident, injury, or death.  As discussed further herein, numerous owners and lessees of the Class Vehicles have experienced engine damage and catastrophic failure while operating the Class Vehicle, thus placing themselves and those around them in immediate danger.

---

[1] Plaintiffs reserve the right to amend or add to the vehicle models included in the definition of Class Vehicles after conducting discovery.

-2-

CLASS ACTION COMPLAINT
CASE NO.:

4.      Not only did Toyota actively conceal the fact that particular components within the Class Vehicles' engines are defective, they did not reveal that the existence of the defect would diminish the intrinsic and resale value of the Class Vehicles and lead to the safety concerns described herein.

5.      Toyota has long been aware of the Oil Consumption Defect.  Yet, notwithstanding its longstanding knowledge of this design defect, Toyota has routinely refused to repair the Class Vehicles without charge when the defect manifests.

6.      Many other owners and lessees of the Class Vehicles have communicated with Defendants' agents to request that they remedy and/or address the Oil Consumption Defect and/or resultant damage at no expense.  Defendants have failed and/or refused to do so.

7.      Toyota has also refused to take any action to correct this concealed design defect when it manifests in the Class Vehicles outside of the warranty period.  Since the Oil Consumption Defect typically manifests shortly outside of the warranty period for the Class Vehicles – and given Defendants' knowledge of this concealed, safety related design defect – Toyota's attempt to limit the warranty with respect to the Oil Consumption Defect is unconscionable here.

8.      Despite notice and knowledge of the Oil Consumption Defect from the numerous complaints it has received, information received from dealers, National Highway Traffic Safety Administration ("NHTSA") complaints, and its own internal records – including durability testing, Toyota has not recalled the Class Vehicles to repair the Oil Consumption Defect, offered its customers a suitable repair or replacement free of charge, or offered to reimburse its customers who have incurred out-of-pocket expenses to repair the defect.

9.      As a result of Defendants' unfair, deceptive and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiffs, have suffered an ascertainable loss of money and/or property and/or loss in value.  The unfair and deceptive trade practices committed by Defendants were conducted in a manner giving rise to substantial aggravating circumstances.

10.      Had Plaintiffs and other Class members known about the Oil Consumption Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

CLASS ACTION COMPLAINT
CASE NO.:

11.     As a result of the Oil Consumption Defect and the monetary costs associated with attempting to repair such defect, Plaintiffs and the Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Toyota's conduct.

12.     Accordingly, Plaintiffs bring this action to redress Defendants' violations of various state's consumer fraud statutes, and also seek recovery for Defendants' breach of express warranty, breach of implied warranty, breach of the duty of good faith and fair dealing, and common law fraud.

## JURISDICTION

13.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.  This court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district.  Additionally, there are one or more authorized Toyota dealers within this district and Defendants have advertised in this district and have received substantial revenue and profits from their sales and/or leasing of Class Vehicles in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

15.     This court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district, and intentionally and purposefully placed Class Vehicles into the stream of commerce within the districts of California and throughout the United States.

## PARTIES

**Plaintiff April Lax**

16.     Plaintiff April Lax ("Plaintiff Lax") is a citizen of the State of California, and currently resides in San Francisco, California.

17.     On or about June 2006, Plaintiff Lax purchased a new 2006 Toyota RAV4 from an authorized Toyota dealer in San Francisco, California.

CLASS ACTION COMPLAINT
CASE NO.:

18.     Plaintiff Lax purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.  Her vehicle bears Vehicle Identification Number ("VIN"): JTMBD31V266017980.

19.     In or about February 2013, Plaintiff Lax took her vehicle to a local service center, Sunset Service Super Lube ("Sunset Service"), for scheduled maintenance.  The service center informed her that no engine oil was displaying on the engine oil dipstick of her vehicle.  At no time prior to bringing her vehicle to Sunset Service did Plaintiff Lax see the engine oil indicator lamp on her dashboard light up.  After further investigation, Plaintiff Lax discovered that the engine oil lamp occasionally flickers when the vehicle is low on engine oil, but rarely, if ever, does it light up and stay on.

20.     Sunset Service informed Plaintiff Lax that it was abnormal for a vehicle to be consuming oil at a rate that would deplete the entirety of her oil shorter than Toyota's recommended maintenance intervals.  Sunset Service also informed Plaintiff Lax that certain models of Toyota's RAV4 consumed oil at an abnormal rate.

21.     Plaintiff Lax informed Sunset Service that her vehicle was no longer under warranty.  Sunset Service inquired as to whether Plaintiff Lax purchased an extended warranty on her vehicle.  After responding that she did not have an extended warranty, a Sunset Service employee recommended that Plaintiff Lax purchase a new vehicle because the Oil Consumption Defect in Plaintiff Lax's vehicle would likely increase in severity and lead to further engine issues and increased maintenance as the vehicle continued to age.

22.     Sunset Service recommended that Plaintiff Lax switch to a heavier weight engine oil to reduce the oil consumption rate in her vehicle.  After doing so, Plaintiff Lax's vehicle consumed engine oil at approximately the same rate as with lighter weight engine oils.

23.     At all times relevant herein, Plaintiff Lax strictly adhered to Toyota's recommended maintenance intervals.

24.     As of the filing of this Complaint, Plaintiff Lax's vehicle consumes approximately six and a half quarts of engine oil (in an engine with only 4.3 quarts of oil capacity) between recommended oil changes, or approximately one quart of oil every 750 to 800 miles.  At this rate, Plaintiff Lax's vehicle will consume all of the oil in the 4.3 quart pan in only about 3,225 to 3,440 miles.  This is in

CLASS ACTION COMPLAINT
CASE NO.:

sharp contrast to the manufacturer's recommended oil change interval of every 5,000 miles or six months.

25. The Oil Consumption Defect in Plaintiff Lax's vehicle has worsened over time, with the engine consuming even more engine oil as it ages.

26. Plaintiff Lax has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Oil Consumption Defect, including, but not limited to, out of pocket loss associated with the Oil Consumption Defect and future repairs and diminished value of her vehicle.

27. None of the Defendants, or any of their agents, dealers, or other representatives informed Plaintiff Lax of the existence of the Oil Consumption Defect and/or defective vehicle design prior to purchase.

**Plaintiff Sonya Sanders**

28. Plaintiff Sonya Sanders ("Plaintiff Sanders") is a citizen of the state of Florida and currently resides in Brooksville, Florida.

29. On or about February 18, 2008, Plaintiff Sanders purchased a new 2008 Toyota Camry from an authorized Toyota dealer near her home in Florida.

30. Plaintiff Sanders purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.

31. In or about early 2012, Plaintiff Sanders brought her car to a local service center to have her engine oil changed when her vehicle had approximately 40,000 miles on the odometer. The service center informed Plaintiff Sanders that there was not any oil on the engine oil dipstick. The service center changed Plaintiff Sanders' oil and asked her to come back after driving 800 miles so the service center could check for oil leaks and/or oil consumption in her vehicle.

32. After driving 800 miles, Plaintiff Sanders returned to the local service center and the service center informed Plaintiff Sanders that the car had lost a substantial amount of oil since her last visit. After conducting further research, the local service center informed Plaintiff Sanders of the existence of the Technical Service Bulletin ("TSB") Toyota had issued to dealers regarding excessive oil consumption in her vehicle. This was the first time Plaintiff Sanders learned of the TSB.

-6-

33.     After learning of the TSB, Plaintiff Sanders took her car to a Toyota dealership.  The dealership conducted an oil consumption test.  The oil consumption test consisted of the dealer filling the engine with engine oil, locking the dipstick down with tape so the dealership would know if Plaintiff Sanders tampered with the oil levels, and required Plaintiff Sanders to return to the Toyota dealership every 1,000 miles.  At the conclusion of the oil consumption test, the Toyota dealership informed Plaintiff Sanders that her car was consuming excessive oil and Toyota forwarded the results of the oil consumption test to Toyota's corporate office.  During the oil consumption test, Plaintiff Sanders' vehicle had approximately 51,000 miles on the odometer.

34.     Shortly after completing her first oil consumption test, Toyota contacted Plaintiff Sanders and asked that another oil consumption test be performed.  Plaintiff Sanders again submitted to an oil consumption test substantially similar to the one described above.  At the conclusion of this oil consumption test, the Toyota dealership informed Plaintiff Sanders that Toyota would not fix the Oil Consumption Defect in her vehicle under warranty.

35.     At all times relevant herein, Plaintiff Sanders strictly adhered to Toyota's recommended maintenance intervals.

36.     As of the filing of this Complaint, Plaintiff Sander's vehicle consumes approximately five and a half quarts of engine oil (in an engine with only 4.3 quarts of oil capacity) between recommended oil changes, or approximately one quart of oil every 800 to 1000 miles.  At this rate, Plaintiff Sanders' vehicle will consume all of the oil in the 4.3 quart pan in about 3,440 miles to 4,300 miles.  This is in sharp contrast to the manufacturer's recommended oil change interval of every 5,000 miles or six months.

37.     The Oil Consumption Defect in Plaintiff Sander's vehicle has worsened over time, with the engine consuming even more engine oil as it ages.

38.     Plaintiff Sanders has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Oil Consumption Defect, including, but not limited to, out of pocket loss associated with the Oil Consumption Defect and future repairs and diminished value of her vehicle.

CLASS ACTION COMPLAINT
CASE NO.:

39.     None of the Defendants, or any of their agents, dealers, or other representatives informed Plaintiff Sanders of the existence of the Oil Consumption Defect and/or defective vehicle design prior to purchase.

**Plaintiff Shannon Norris**

40.     Plaintiff Shannon Norris ("Plaintiff Norris") is a resident of the State of Washington and currently resides in Vancouver, Washington.

41.     On or about June 13, 2006, Plaintiff Norris purchased a new 2007 Toyota Camry LE from an authorized Toyota dealer near her home in Vancouver, Washington.

42.     Plaintiff Norris purchased (and still owns) this vehicle, which is used for personal, family, and/or household uses.

43.     At approximately 66,000 miles, Plaintiff Norris brought her vehicle to an authorized Toyota dealer for a regularly scheduled oil change.  During this visit, Toyota informed Plaintiff Norris that there was not any oil displaying on the engine oil dipstick.  To further diagnose the cause of the oil loss, Toyota asked Plaintiff Norris to submit to an oil consumption test.  The oil consumption test consisted of the dealer filling the engine with oil, locking the dipstick down with tape so the dealership would know if Plaintiff Norris tampered with the oil levels, and requiring Plaintiff Norris to return to the Toyota dealership every 1,000 miles.

44.     After the first oil consumption test was completed, the Toyota dealership requested two additional oil consumption tests – substantially similar to the oil consumption test described in the above paragraph – to further diagnose the problem.  At the conclusion of the three oil consumption tests, Plaintiff Norris' vehicle had approximately 70,000 miles on the odometer.  Toyota informed Plaintiff Norris that her car was consuming excessive oil but, since Plaintiff Norris' vehicle was no longer under warranty, Toyota would not cover the cost of the needed repair under warranty.  Toyota also informed Plaintiff Norris that Toyota would have covered the repair under its extended warranty, had Plaintiff Norris purchased it.

45.     At all times relevant herein, Plaintiff Norris strictly adhered to Toyota's recommended maintenance intervals.

CLASS ACTION COMPLAINT
CASE NO.:

46.     Plaintiff Norris then called and filed a complaint with Toyota's corporate office regarding Toyota's failure to cover the necessary repairs to her vehicle under warranty and was assigned case number #1112051336.  Plaintiff Norris also emailed the owners of the Toyota dealership where she purchased her vehicle, expressing her loyalty to the dealership and her frustration at both Toyota and the Toyota dealership regarding the Oil Consumption Defect.

47.     Subsequent to these complaints, the Toyota dealership agreed to pay a percentage of the cost to repair Plaintiff Norris' engine.  Toyota also agreed to pay for a percentage of the repair.  After much persistence, Plaintiff Norris paid $1,000 out of pocket for a new engine, with Toyota and the Toyota dealership covering the remainder of the cost.

48.     Plaintiff Norris has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Oil Consumption Defect, including, but not limited to, out of pocket loss associated with the Oil Consumption Defect and future repairs and diminished value of her vehicle.

49.     None of the Defendants, or any of their agents, dealers, or other representatives informed Plaintiff Norris of the existence of the Oil Consumption Defect and/or defective vehicle design prior to purchase.

**Plaintiff Greg Jones**

50.     Plaintiff Greg Jones ("Plaintiff Jones") is a resident of the State of New York and currently resides in Cornwall on Hudson, New York.

51.     On or about December 1, 2007, Plaintiff Jones purchased a new 2007 RAV4 from an authorized Toyota dealer near his home in Cornwall on Hudson, New York.

52.     Plaintiff Jones purchased (and still owns) this vehicle, which is used for personal, family, and/or household uses.

53.     At approximately 50,000 miles, the low oil lamp on the instrument cluster of Plaintiff Jones' vehicle illuminated.  Upon further inspection, the engine oil dipstick on his vehicle did not register any oil in the engine.  At this time, Plaintiff Jones had driven his vehicle approximately 2,200 miles after his last oil change.  Plaintiff Jones then left his RAV4 at home and took another vehicle to purchase three quarts of motor oil, which he then put in his RAV4.

CLASS ACTION COMPLAINT
CASE NO.:

54. Plaintiff Jones first called his local Toyota dealership about the motor oil issue. Subsequently, Plaintiff Jones drove to his local Toyota dealership where he informed the dealership of the existence of the Oil Consumption Defect and asked for the Toyota dealership to cover any necessary repairs under warranty. The service manager of the Toyota dealership informed Plaintiff Jones that the repair was not covered under Toyota's standard warranty and that Toyota would only cover the necessary repairs under warranty if Plaintiff Jones purchased an extended warranty. Plaintiff Jones did not purchase an extended warranty and Toyota declined to repair the Oil Consumption Defect under warranty.

55. At all times relevant herein, Plaintiff Jones strictly adhered to Toyota's recommended maintenance intervals.

56. As of the filing of this Complaint, Plaintiff Jones' vehicle consumes approximately five quarts of engine oil (in an engine with only 4.3 quarts of oil capacity) between recommended oil changes, or roughly one quart of oil every 1000 miles. At this rate, Plaintiff Jones' vehicle will consume all of the engine oil in the 4.3 quart oil pan in approximately 4,300 miles. This is in sharp contrast to the manufacturer's recommended oil change interval of every 5,000 miles or six months.

57. The Oil Consumption Defect in Plaintiff Jones' vehicle has worsened over time, with the engine consuming even more oil as it ages.

58. Plaintiff Jones has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Oil Consumption Defect, including, but not limited to, out of pocket loss associated with the Oil Consumption Defect and future repairs and diminished value of his vehicle.

59. None of the Defendants, or any of their agents, dealers, or other representatives informed Plaintiff Jones of the existence of the Oil Consumption Defect and/or defective vehicle design prior to purchase.

**Plaintiff Douglas Medland**

60. Plaintiff Douglas Medland ("Plaintiff Medland") is a resident of the State of California and currently resides in Los Angeles, California.

61.     On or about October 2006, Plaintiff Medland purchased a new 2007 Scion tC from an authorized Toyota dealer near his home in Los Angeles, California.

62.     Plaintiff Medland purchased (and still owns) this vehicle, which is used for personal, family and/or household uses.

63.     In or around February 2014, while operating his vehicle, Plaintiff Medland heard his engine making a knocking noise.  Plaintiff Medland then took his vehicle to a friend who checked the engine oil dipstick and observed that it was not displaying any oil.  Plaintiff Medland's friend filled the vehicle's engine with oil and also changed the oil filter.

64.     The following day, Plaintiff Medland took his vehicle in to an authorized Toyota dealership.  At this time, Plaintiff Medland's vehicle had approximately 79,000 miles on the odometer. Plaintiff Medland informed the dealership of his experience and asked for the dealership to repair his vehicle under warranty.  The dealership declined to repair the vehicle under warranty and offered to fix the vehicle for approximately $5,600.  Plaintiff Medland declined the $5,600 repair.  At no time prior to bringing the vehicle to Toyota dealership did Plaintiff Medland see the engine oil indicator lamp on the dashboard illuminate to indicate the oil level was low or did he see any other dashboard lamp illuminate that would indicate there was a problem with his vehicle.

65.     Plaintiff Medland called Toyota corporate to inquire into whether Toyota corporate would offer to cover the cost of the repair.  Toyota corporate also declined to repair Plaintiff Medland's vehicle and stated that because Plaintiff Medland's vehicle was no longer under warranty, Plaintiff Medland would have to pay for any repairs himself.

66.     Plaintiff Medland, both due to his fear of further damaging the engine and placing himself in danger, has stopped driving his Scion vehicle.

67.     At all times relevant herein, Plaintiff Medland strictly adhered to Toyota's recommended maintenance intervals and always had his vehicle serviced at an authorized Toyota dealership.

68.     Plaintiff Medland has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Oil Consumption Defect, including, but not limited to, out of pocket loss associated with the Oil Consumption Defect and future repairs and diminished value of his vehicle.

CLASS ACTION COMPLAINT
CASE NO.:

69. None of the Defendants, or any of their agents, dealers, or other representatives informed Plaintiff Medland of the existence of the Oil Consumption Defect and/or defective vehicle design prior to purchase.

**Plaintiff Kimberly Buschmann**

70. Plaintiff Kimberly Buschmann ("Plaintiff Buschmann") is a resident of the State of New Jersey and currently resides in Morristown, New Jersey.

71. On or about early 2007, Plaintiff Buschmann purchased a new 2007 Scion tC from an authorized Toyota dealership in Morristown, New Jersey.

72. Plaintiff Buschmann purchased this vehicle for personal, family, and/or household uses and at all times relevant herein, was the primary user of the vehicle.

73. At approximately 66,000 miles, Plaintiff Buschmann's fiancé, Albert Buschmann ("Mr. Buschmann, or, collectively, the "Buschmanns"), dropped her off at work before taking the vehicle in to an authorized Toyota dealer for a regularly scheduled oil change. After dropping off his fiancé and on his way to the dealership, Mr. Buschmann heard a knocking noise coming from the engine. At no time prior to bringing the vehicle to a Toyota dealership did either Mr. Buschmann or Plaintiff Buschmann see the engine oil indicator lamp on the dashboard illuminate to indicate the oil level was low or did they see any other dashboard lamp illuminate that would indicate there was a problem with the vehicle.

74. After arriving at the dealership, the dealership informed Mr. Buschmann that a piston in the engine had "blown out". Mr. Buschmann inquired as to how this happened and the dealership stated there was no engine oil on the dipstick and that it was the cause of the problem. The dealership also informed Mr. Buschmann that the dealership was aware of oil consumption issues in various models of 2007 Scion and Toyota vehicles. Mr. Buschmann inquired about a recall or repair, and the dealership informed Mr. Buschmann that the vehicle was out-of-warranty and that there was no recall and thus there was nothing the Toyota dealership could do to remedy the problem without Plaintiff Buschmann or Mr. Buschmann paying for the cost of a repair or purchasing a new engine.

75. Mr. Buschmann then called Toyota's corporate offices on behalf of Plaintiff Buschmann in an attempt to have Toyota extend the warranty on Plaintiff Buschmann's vehicle or to have Toyota repair the engine free of charge as a gesture of goodwill. Toyota corporate informed Mr. Buschmann

CLASS ACTION COMPLAINT
CASE NO.:

that it would not repair the vehicle under warranty or pay for all or part of the cost to repair the vehicle as a gesture of goodwill.

76.    At all times relevant herein, Plaintiff Buschmann strictly adhered to Toyota's recommended maintenance intervals.

77.    The Buschmann's were approximately five weeks from their wedding, and, in need of a functioning car for their wedding, the Buschmann's decided to rent a car until approximately one week after their wedding.

78.    After returning the rental car, the Buschmann's took Plaintiff Buschmann's 2007 Scion tC vehicle to a Hyundai dealer to trade the vehicle in for a Hyundai Sonata.  When trading it into Hyundai, the Buschmann's disclosed the existence of the damaged piston as well as the existence of the Oil Consumption Defect in the vehicle.  The Hyundai dealer offered approximately $2,000 for Plaintiff Buschmann's vehicle, which the Buschmann's accepted.

79.    Plaintiff Buschmann has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Oil Consumption Defect, including, but not limited to, out of pocket loss associated with the Oil Consumption Defect and diminished value of her vehicle.

80.    None of the Defendants, or any of their agents, dealers, or other representatives informed Plaintiff Buschmann of the existence of the Oil Consumption Defect and/or defective vehicle design prior to purchase.

**The Defendants**

81.    Defendant Toyota Motor Corporation ("TMC") is a Japanese corporation.  TMC is the parent corporation of Toyota Motor Sales, U.S.A., Inc.  TMC, through its various entities, designs, manufactures, markets, distributes and sells Toyota and Scion automobiles in California, Washington, New York, New Jersey, and Florida, and multiple other locations in the United States.  Scion is a brand of vehicles produced by TMC primarily for the North American market.

82.    Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is incorporated and headquartered in the State of California.  TMS is TMC's U.S. sales and marketing division, which oversees sales and other operations across the United States.  TMS distributes Toyota and Scion vehicles and sells these

CLASS ACTION COMPLAINT
CASE NO.:

vehicles through its network of dealers.  Money received from the purchase of a Toyota or Scion vehicle from a dealership flows from the dealer to TMS.

83.     TMS and TMC sell Toyota and Scion vehicles through a network of dealerships who are the agents of TMS and TMC.

84.     TMS and TMC are collectively referred to herein as "Toyota" or "Defendants" unless specifically identified as TMS or TMC.

85.     Upon information and belief, Defendant TMC communicates with Defendant TMS concerning virtually all aspects of the Toyota products it distributes within the United States.

86.     Upon information and belief, the design, manufacture, distribution, service, repair, modification, installation and decisions regarding the 2AZ-FE engine as it relates to the Oil Consumption Defect within the Class Vehicles were performed exclusively by Defendants.

87.     Upon information and belief, Defendants developed the owner's manuals, warranty booklets and information included in maintenance recommendations and/or schedules for the Class Vehicles.

88.     Defendants engage in continuous and substantial business in California.

89.     The true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiffs, who therefore sue such defendants by such fictitious names.  Each of the defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the Defendants designated herein as DOES when such identities become known.

90.     Based upon information and belief, Plaintiffs allege that at all times mentioned herein, each and every defendant was acting as an agent and/or employee of each of the other defendants, and at all times mentioned was acting within the course and scope of said agency and/or employment with the full knowledge, permission, and consent of each of the other defendants.  In addition, each of the acts and/or omissions of each defendant alleged herein were made known to, and ratified by, each of the other defendants.

CLASS ACTION COMPLAINT
CASE NO.:

**TOLLING OF STATUTES OF LIMITATIONS**

91.     Any applicable statute(s) of limitations have been tolled by Defendants' knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true, latent nature of the Oil Consumption Defect until shortly before this class action litigation was commenced.

92.     Defendants were and remain under a continuing duty to disclose to Plaintiffs and the members of the Class the true character, quality and nature of the Class Vehicles, that the Oil Consumption Defect is based on a poor design, that it will require costly repairs, poses a safety concern, and diminishes the resale value of the Class Vehicles. As a result of the active concealment by Defendants, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**FACTUAL ALLEGATIONS**

A.     **The Oil Consumption Defect within the Class Vehicles.**

93.     Toyota is a multinational corporation with over 300,000 employees worldwide. As of the end of 2013, Toyota was the eighth largest company in the world by revenue.[2]

94.     The 2AZ-FE engine, which TMC used in the Class Vehicles, is a 2.4 liter engine that was manufactured by Toyota Motor Manufacturing Kentucky, Inc. at its manufacturing plant in Kentucky. The 2AZ-FE engine is a straight-four piston engine with an aluminum engine block, cast iron cylinder liners and aluminum cylinder heads with dual overhead camshafts.

95.     The 2AZ-FE engines in the Class Vehicles have an engine oil pan with a capacity of 4.3 quarts. Furthermore, according to the Class Vehicle maintenance schedules, Toyota recommends the engine oil in the Class Vehicles be changed every 5,000 miles or six months.[3]

96.     As background, four piston engines use four reciprocating pistons to convert pressure into a rotating motion. In the 2AZ-FE engine, gasoline is mixed with air in the combustion chambers of

---

[2] *See The 500 largest corporations in the world*, CNN Money, *available at* http://money.cnn.com/magazines/fortune/global500/ (last visited Jan. 20, 2014).
[3] *See, e.g.* http://www.toyota.com/t3Portal/document/omms/07ToyMS_MS0014/pdf/07omsour/2007/07toysmt/71v 1smt.pdf (last visited Feb. 10, 2014).

CLASS ACTION COMPLAINT
CASE NO.:

the engine.  To generate the rotating motion, a four step sequence is used.  First, the intake stroke begins with the inlet valve opening and a vaporized fuel mixture is pulled into the combustion chamber. Second, the compression stroke begins with the inlet valve closing and the piston beginning its movement upward, compressing the fuel mixture in the combustion chamber.  Third, the power stroke begins when the spark plug ignites the fuel mixture, expanding the gases and generating power that is transmitted to the crank shaft.  Fourth, the exhaust stroke begins with the exhaust valve opening and the piston moving back down, allowing the exhaust gases to escape the cylinder.  The exhaust valve then closes, the inlet valve opens, and the sequence repeats itself.   A diagram of this four step sequence is below:



Intake Stroke      Compression Stroke      Power Stroke      Exhaust Stroke

97.     During this process, engine oil is used to lubricate the piston and cylinder wall as the piston moves up and down through the four stroke sequence.  Engine oil is also necessary in this process to reduce wear on moving parts throughout the engine, improve sealing, and cool the engine by carrying

CLASS ACTION COMPLAINT
CASE NO.:

heat away from the moving parts.  If there is an insufficient amount of engine oil, the engine will not have the necessary lubrication or cooling, thereby causing premature wear of internal parts, inadequate performance, and/or catastrophic engine failure.

98.     The top sidewall of each engine piston contains rings that, when correctly sized and installed, prevent engine oil from entering the combustion chamber, as well as optimizing compression. On each piston, there are three rings: the top compression ring, the second compression ring, and the oil control ring.  If engine oil is able to pass by any of these piston rings then it will enter the combustion chamber of the engine.  Once engine oil is in the combustion chamber, it will not only cause a decrease in engine performance but it was also be burned off during the power stroke sequence, reducing the overall amount of oil contained in the engine.  A diagram of a piston and these rings is below:



99.     In August of 2011, Toyota issued Technical Service Bulletin ("TSB") 0094-11 to address complaints of excessive engine oil consumption in the 2AZ-FE engines contained in the Class Vehicles. TSBs are recommended repairs issued by automotive manufacturers and directed to automotive dealers.

CLASS ACTION COMPLAINT
CASE NO.:

TSBs are frequently issued when a manufacturer receives widespread reports of a particular problem in its vehicles.

100. TSB 0094-11 acknowledged the Class Vehicles were experiencing abnormally high levels of engine oil consumption that warranted an intricate repair process to properly remedy. The TSB repair procedure identifies the piston assembly as the root cause of the Oil Consumption Defect and, when repaired according to the TSB, with redesigned pistons and piston rings, the abnormal and excessive engine oil consumption ceases. As explained above, the pistons function as the heart of the engine, with the four stroke sequence generating the power that is distributed and used throughout the entire vehicle.

101. Regardless of this known defect, and pursuant to TSB 0094-11, Toyota requires a customer to first undergo an oil consumption test. The Class Vehicle must be taken to a Toyota dealership where the engine is filled with oil, the engine dipstick marked and then the individual is instructed to drive for 1,200 miles and return for inspection. If the engine consumes greater than one quart of oil then, according to Toyota, TSB 0094-11 applies and the vehicle should be repaired under warranty. If the engine consumes one quart of oil or less then Toyota considers this "normal" oil consumption and will not repair the engine defect under warranty.

102. Toyota's recommended oil change interval is one oil change every 5,000 miles. If a consumer follows Toyota's recommended maintenance schedule, a loss of one quart of oil every 1,200 miles will result in the consumption of the entire amount of oil contained in the Class Vehicle's engine by 5,160 miles. In essence, Toyota's assertion that consuming oil at a rate of 1,200 miles is normal puts its customers in danger of running out of oil between Toyota's recommend oil change intervals, which will cause premature wear of internal parts, inadequate performance, and/or catastrophic engine failure.

103. Toyota's proposed repair procedure, according to TSB 0094-11, is to replace the piston and piston ring set contained in the 2AZ-FE engine. The first step of this procedure is to remove the engine from the Class Vehicle. Once removed from the vehicle, the engine is then disassembled to reach the heart of the engine which houses the piston assembly. Upon information and belief, Class members have been quoted between $2000 and $7000 by Toyota dealerships for this repair.

CLASS ACTION COMPLAINT
CASE NO.:

104.     TSB 0094-11 was issued only to authorized Toyota dealers and was never issued to the general public or the owners and lessees of the Class Vehicles.

105.     Toyota's failure to notify the general public and the owners and lessees of the Class Vehicles regarding the Oil Consumption Defect is particularly egregious since, once the Oil Consumption Defect manifests, owners and lessees of the Class Vehicles may run out of engine oil before Toyota's recommended oil change interval, thereby causing abrupt catastrophic engine damage and placing the driver and its occupants at an increased risk of accident, injury, and death.[4]

106.     Toyota's Powertrain Warranty is in effect for five (5) years or 60,000 miles, whichever occurs first.  The Class Vehicles are various makes and models of MYs 2006-2011 Toyota and Scion vehicles.  Based on the date the TSB was issued – August 11, 2011 – Toyota both acknowledged the Oil Consumption Defect and suggested a repair that would fully remedy the Oil Consumption Defect while all, or nearly all, of the Class Vehicles were still covered under Toyota's Powertrain Warranty.[5]

107.     Despite Toyota's acknowledgement of the Oil Consumption Defect in the Class Vehicles during the warranty period for all or nearly all of the Class Vehicles, Toyota has declined to extend goodwill coverage to those owners and lessees of the Class Vehicles who experienced the Oil Consumption Defect after the Toyota Powertrain Warranty expired.

108.     Car engines are designed to function for periods (and mileages) substantially in excess of those specified in Defendants' warranties, and given past experience, consumers legitimately expect to enjoy the use of an automobile without worry that the engine will catastrophically fail for significantly longer than the limited times and mileages identified in Defendants' warranties.

109.     Automobiles must incorporate designs that are able to withstand foreseeable usage conditions such as the operation of the vehicle without excessive engine oil consumption.  A vehicle can

---

[4] Toyota recommends an oil change every 5,000 miles or six months.  When the Oil Consumption Defect manifests itself, the 2AZ-FE engine can consume oil at a rate of 800 miles per quart.  With a 4.3 quart capacity, the entire engine oil capacity can be consumed at 3,440 miles - over 1,500 miles before the recommended oil change.

[5] For example, if a consumer purchased a MY 2007 Toyota vehicle on January 1, 2007, the five year/60,000 mile warranty would expire on January 1, 2012 if the consumer had less driven less than 60,000 miles.  Due to the fact that the TSBs are frequently issued after a manufacturer receives

CLASS ACTION COMPLAINT
CASE NO.:

suffer catastrophic damage and costly repairs from customary environmental and usage conditions when an insufficient vehicle design is implemented.

110. The Class Vehicles were manufactured with defective 2AZ-FE engines. This defect renders the Class Vehicles prone to the Oil Consumption Defect and catastrophic engine failure. The Oil Consumption Defect poses serious safety and security issues for operators and occupants of the Class Vehicles.

111. In many instances, consumers have incurred and will continue to incur expenses for the diagnosis of the Oil Consumption Defect, repair and replacement of the 2AZ-FE engine, and the cost of additional motor oil despite such defect having been contained in the Class Vehicles when manufactured by Defendants.

112. Upon information and belief, Defendants, through (1) their own records of customers' complaints, (2) dealership repair records, (3) records from the National Highway Traffic Safety Administration ("NHTSA"), (4) warranty and post-warranty claims, (5) internal durability testing, and (6) other various sources, were well aware of the Oil Consumption Defect but failed to notify consumers of the nature and extent of the problems with the Class Vehicle 2AZ-FE engines or provide any adequate remedy.

113. Defendants failed to adequately research, design, test and/or manufacture the Class Vehicles before warranting, advertising, promoting, marketing, and selling the Class Vehicles as suitable and safe for use in an intended and/or reasonably foreseeable manner.

114. The Class Vehicles came with a comprehensive "Basic Warranty" that covers "all components other than normal wear and maintenance items" for a period of 36 months or 36,000 miles (whichever occurs first).[6] In addition, the Class Vehicles were sold with a Powertrain warranty that – subject to exceptions that are inapplicable here – lasts for the sooner of 60 months or 60,000 miles. The Powertrain warranty applies to, *inter alia*, the engine, cinder block head and all internal parts, the oil pan

---

numerous complaints about a particular issue, Toyota knew about the Oil Consumption Defect *at least* as early as August 2011, and likely many months – or years – before then.

[6] *See* http://www.toyota.com/t3Portal/document/omms/07ToyMS_MS0014/pdf/07omsour/2007/07toysmt/71v1smt.pdf (last visited Mar. 24, 2014).

CLASS ACTION COMPLAINT
CASE NO.:

and gaskets.  Toyota's Powertrain warranty purports to "cover[] repairs needed to correct defects in materials or workmanship of any" such covered component.  Buyers, lessees, and other owners of the Class Vehicles were without access to the information concealed by Defendants as described herein, and therefore reasonably relied on Defendants' representations and warranties regarding the quality, durability, and other material characteristics of their vehicles.  Had these buyers and lessees known of the defect and the potential danger, they would have taken steps to avoid that danger and/or would have paid less for their vehicles than the amounts they actually paid, or would not have purchased their vehicles.

**B.    Complaints by Other Class Members.**

115.    Plaintiffs' experiences are by no means isolated or outlying occurrences.  Indeed, the internet is replete with examples of blogs and other websites where consumers have complained of the exact same Oil Consumption Defect within the Class Vehicles.

116.    The complaints also indicate Toyota's awareness of the defect and its potential danger.  Representatives examples of complaints on the NHTSA website regarding the Class Vehicles are included below (with emphasis supplied in capitalized bold, underlined letters)[7]:

i.    ***Toyota Camry Complaints***

Vehicle: 2008 Toyota Camry
Date Complaint Filed: 03/28/2012
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 02/13/2012
NHTSA ID Number: 10453305
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): 4T1BE46K98U...
    SUMMARY:
    **AT 60,000 I NOTICED MY ENGINE RUNNING LOW/ BURNING OIL**. I SINCE HAD 2 OIL CHANGES, NOW AT 66,600 MILES, 2,400 SINCE THE LAST SERVICE, MY DIPSTICK IS HALFWAY BETWEEN "MIN" AND "MAX" IT WAS AT "MAX" AFTER THE LAST OIL CHANGE. I HAVE BEEN IN COMMUNICATION WITH BERNARDI TOYOTA IN FRAMINGHAM MA WHO HAS BEEN HELPFUL HOWEVER **I AM VERY CONCERNED REGARDING MY CAR STARTING TO BURN OIL AT A LOW MILEAGE**. I ALSO PLAN TO FILE A COMPLAINT WITH TOYOTA DIRECTLY.

---

[7] The foregoing complaints are reproduced as they appear on the NHTSA website.  Any typographical errors are attributable to the original author of the complaint.

CLASS ACTION COMPLAINT
CASE NO.:

Vehicle: 2008 Toyota Camry
Date Complaint Filed: 04/05/2012
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 04/05/2012
NHTSA ID Number: 10454280
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): 4T1BE46K38U...
     SUMMARY:
     ENGINE IS BURNING LARGE AMOUNTS OF OIL BETWEEN THE SCHEDULED OIL
     CHANGE OF 5000 MILES. **OIL IN DIPSTICK IS DROPPING FROM FULL TO EMPTY
     WITHIN THE 5000 MILES OIL CHANGE.** *TR

Vehicle: 2008 Toyota Camry
Date Complaint Filed: 11/27/2012
Component(s): ENGINE
Date of Incident: 12/07/2011
NHTSA ID Number: 10486194
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): Not Available
     SUMMARY:
     2008 CAMRY BURNS OIL. NOTICED IT IN DEC 2011 AND DEALER INFORMED THAT I
     NEED TO BRING IT IN AND PAY FOR DIAGNOSTICS AS IT WAS OUT OF
     WARRANTY. DIDN'T NOTICE IT FOR A WHILE AND **NOW AGAIN THE SAME
     PROBLEM AND MY CAR WAS TOTALLY OUT OF OIL 2200 MILES AFTER AN OIL
     CHANGE.** ALL OIL CHANGES WERE DONE AT TOYOTA DEALER AND THEY
     INFORMED ME THAT EVERYTHING WAS FINE WITH THE CAR. **SPOKE TO
     TOYOTA CUSTOMER SERVICE AND THEY SAID THAT I NEED TO PAY FOR
     DIAGNOSTICS AT A DEALERSHIP AND PAY FOR ANY EXPENSES TO FIX THE
     ISSUE.** *TR

  ii.   ***Toyota RAV4 Complaints***

Vehicle: 2006 Toyota RAV4
Date Complaint Filed: 12/22/2012
Component(s): ENGINE
Date of Incident: 12/22/2012
NHTSA ID Number: 10489526
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): JTMBD31V666...
     SUMMARY:
     THE CHECK ENGINE OIL LIGHT BEGAN FLICKERING UNDER HARD BRAKING.
     LIGHT NEVER WAS ON UNDER NORMAL IDLE OR TRAVEL. **UPON CHECKING OIL
     ON DIPSTICK - NO OIL REGISTERED ON DIPSTICK. I IMMEDIATELY
     PROCEEDED TO THE CHANGE OIL AND THE OIL PAN ONLY CONTAINED
     APPROXIMATELY 1.2 QUARTS OR 75% LESS THAN THE 4.5 QUARTS SPECIFIED.
     UPON WEB RESEARCH IT APPEARS RAV4 HAS PROBLEMS WITH EXCESSIVE**

**OIL CONSUMPTION**. REGISTERED A COMPLAINT WITH TOYOTA USA AS **I KNOW HAVE CONCERNS DAMAGE WAS DONE TO ENGINE AS WARNING LIGHT SHOULD HAVE COME ON SOONER.** *TR

Vehicle: 2006 Toyota RAV4
Date Complaint Filed: 05/06/2013
Component(s): ENGINE
Date of Incident: 05/06/2013
NHTSA ID Number: 10510847
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): JTMBD33V966...
SUMMARY:
DRIVING CAR AND THE OIL LIGHT FAILED TO INDICATE OIL WAS VERY LOW. HEARD A KNOCKING NOISE SO I CHECKED THE OIL AND DISCOVERED THE OIL WAS LOW ALTHOUGH OIL HAD JUST BEEN ADDED A FEW DAYS EARLIER. **I WAS NOT SURE IF THE VECHICLE WAS FIT TO DRIVE, SO FOR SAFETY REASONS I HAD THE CAR TOWED TO MY MECHANIC. THE MECHANIC CHECKED OUT THE CAR AND SAID THE ENGINE WAS DAMAGED DUE TO THE LACK OF OIL AND CONSTANT BURNING OF OIL DUE TO A DEFECT IN THE TOYOTA RAV 4 ENGINE/OIL SYSTEM WHICH CAUSES THE OIL TO COMBUSE AND BURN OFF PREVENTING THE OIL INDICATOR LIGHT TO ALERT THE DRIVER TO ADD OIL**. THIS DEFECT CAUSES ENGINES TO SEIZE. AT THIS TIME I CALLED TOYOTA OF NORTH AMERICA (1800 331-4331) DIRECTLY TO REPORT THIS ISSUE. **I WAS TOLD THAT AS OF TODAY NO RECALL OR REIMBURSEMENT IS BEING ISSUED BUT IF EVERYONE WITH THIS PROBLEM CALL TOYOTA OF NORTH AMERICA DIRECTLY TO REPORT THEIR PROBLEM THEN AN INVESTIGATION WILL BE ISSUED**. SO PLEASE CALL TODAY SO WE MAY ALL BE REIMBURSED FROM TOYOTA FOR THIS ISSUE THAT THEY ARE WELL AWARE OF AND ARE CHOOSING TO DO NOTHING FOR THE CONSUMERS. THEY WILL THEN GIVE YOU A CASE # THAT THEY TELL YOU TO KEEP JUST IN CASE A RECALL IS ACTIVATED. *TR

iii. ***Toyota Camry HV Complaints***

Vehicle: 2007 Toyota Camry HV
Date Complaint Filed: 03/12/2012
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 12/03/2011
NHTSA ID Number: 10451203
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): JTNBB46K573...
SUMMARY:
DURING THE LAST 2 OR 3 OIL CHANGES THE SHOP I WAS AT NOTED THAT THE CAR WAS LOW ON OIL WHEN IT CAME IT. I'VE ALWAYS MADE SURE THEY FILLED IT TO THE TOP AND WHILE CHECKING IT RECENTLY IN BETWEEN CHANGES (2K BEFORE NEXT OIL CHANGE WAS DUE) THE DIPSTICK WAS ONLY SHOWING OIL AT THE HALFWAY MARKS BETWEEN THE TWO DOTS ON THE STICK. I ALSO

CLASS ACTION COMPLAINT
CASE NO.:

NOTICED THAT DURING HARD ACCELERATION ON THE HIGHWAY SMOKE IS COMING OUT OF THE TAILPIPE. THERE ARE NO VISIBLE LEAKS AND THE CAR HAS BEEN PROPERLY MAINTAINED. **I AM FILING THIS COMPLAINT TO JOIN THE GROWING NUMBER OF CAMRY OWNERS THAT ARE HAVING THIS OIL CONSUMPTION PROBLEM. A CAR WITH LESS THAN 100K MILES SHOULD NOT BE HAVING THIS PROBLEM. AND THE FACT THAT TOYOTA STATES THAT IT IS NORMAL FOR SOME OIL TO BE BURNED IN BETWEEN CHANGES DOES NOT SIT WELL WITH ME. THIS IS UNACCEPTABLE AND TOYOTA NEEDS TO STEP UP AND FIX THIS ISSUE.** *TR

Vehicle: 2007 Toyota Camry HV
Date Complaint Filed: 08/30/2013
Component(s): ENGINE
Date of Incident: 08/26/2013
NHTSA ID Number: 10538055
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): JTNBE46K673...
    SUMMARY:
    FIRST OF ALL: I BOUGHT 2007 CAMRY CERTIFED USED AUG. 2011; 70,000 MILES
    (APPROX.) AT TOYOTA DEALER. CAR HAS BEEN SERVICED ONLY BY THIS
    DEALER AT 5,000 MILES. OIL IS 5W20 (NOT SYNTEHTIC). 8/26/13 TOOK CAR IN FOR
    NYS INSPECTION & ROUTINE SERVICE (CAR WAS EARLY FOR SERVICING, DIDN'T
    WANT TO TAKE IT 2X). I WAS TOLD ENGINE NEEDED 2 QTS. OIL; HAD GONE ONLY
    4,000 MILES SINCE LAST OIL CHANGE; THAT I WOULD NEED TO CHECK OIL AT
    LEAST EVERY 1,000 MI; OR HAVE THEM START THE TEST PROCESS; I WAS TOLD
    THIS IS A NORMAL PROBLEM-TOYOTA BUILDS CARS FOR EPA STANDARDS. I
    JUST READ TOYOTA NATION POSTS**; I FIND THIS IS NOT NORMAL; TOYOTA HAS
    ISSUES WITH I4 ENGINES; MANY FOLKS HAVE HAD SAME PROBLEM & NO
    RESOLVE FROM TOYOTA. I TOO HAVE NEVER HAD TO CHECK OR ADD OIL IN
    BETWEEN REGULAR SERVICING; I HAVE OWNED CARS FOR 40 YRS.; THIS MY
    1ST TOYOTA**. I WAS ALWAYS GM. I WANT MY PROBLEM NOTED. THANK YOU.

iv.    ***Toyota Corolla Complaints***

Vehicle: 2009 Toyota Corolla
Date Complaint Filed: 08/31/2009
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 08/28/2009
NHTSA ID Number: 10282478
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): 1NXBU40E89Z...
    SUMMARY:
    OIL CONSUMPTION PROBLEMS ON 2009 COROLLA MADE FIRST OIL CHANGE AT
    3111 MILES NOW 5031 MILES OIL IS BARELY SHOWING 2000 MILES IN 7 MONTHS
    WHERE IS THE OIL I FEEL TOYOTA HAS FUDGED BY USING 0W-20 TO 5W-20 TO
    PASS CAFE STANDARDS FOR FUEL MILEAGE OR THEY HAVE RING PROBLEMS **A**

CLASS ACTION COMPLAINT
CASE NO.:

**NEW CAR SHOULD NOT LOSE THIS MUCH OIL SOMETHING IS WRONG AND I DON'T WANT TO SEE CAR DAMAGED BY THERE ENGINEERING FAILURE**. *TR

Vehicle: 2009 Toyota Corolla
Date Complaint Filed: 02/17/2010
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 09/15/2008
NHTSA ID Number: 10311518
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): 1NXBU40E19Z...
    SUMMARY:
    EXCESSIVE OIL CONSUMPTION ( 1QT. PER 1K) FOR 09 TOYOTA COROLLA. *TR

v.   ***Scion xB Complaints***

Vehicle: 2008 Scion xB
Date Complaint Filed: 05/06/2010
Component(s): ENGINE AND ENGINE COOLING , SERVICE BRAKES, HYDRAULIC
Date of Incident: 11/06/2008
NHTSA ID Number: 10329187
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): JTLKE50E581...
    SUMMARY:
    TL* THE CONTACT OWNS A 2008 TOYOTA SCION. THE CONTACT STATED WHEN DEPRESSING THE BRAKES, THE BRAKE PEDAL WOULD FALL INTO THE FLOORBOARD AND WOULD FEEL SPONGY AND SOFT. **IN ADDITION, THE VEHICLE WAS CONSUMING LARGE AMOUNTS OF ENGINE OIL.** THE DEALER WAS UNABLE TO DUPLICATE OR LOCATE ANY FAILURE WITHIN THE VEHICLE. THE MANUFACTURER CONFIRMED THAT THE VEHICLE WAS OPERATING AS DESIGNED. THE VEHICLE WAS NOT REPAIRED. THE FAILURE MILEAGE WAS 18,000 AND THE CURRENT MILEAGE 46,000.

Vehicle: 2008 Scion xB
Date Complaint Filed: 12/21/2011
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 12/08/2011
NHTSA ID Number: 10440847
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): JTLKE50E481...
    SUMMARY:
    TL* THE CONTACT OWNS A 2008 TOYOTA SCION XB. THE CONTACT STATED THAT AFTER TAKING THE VEHICLE TO THE DEALER FOR ROUTINE MAINTENANCE, **THE CONTACT WAS ADVISED THAT THE PISTONS IN THE ENGINE WERE NOT RETAINING OIL AS IT SHOULD**. THE DEALER MADE REPAIRS TO THE PISTON ASSEMBLY. THE MANUFACTURER WAS CONTACTED AND THEY OFFERED TO PAY FOR THE PART AND THE CONTACT WOULD HAVE TO COVER THE LABOR COSTS.

-25-

CLASS ACTION COMPLAINT
CASE NO.:

THE FAILURE MILEAGE WAS APPROXIMATELY 70,000. UPDATED 02/03/12*LJ
UPDATED 02/10/12

vi.   ***Scion tC Complaints***

Vehicle: 2007 Scion tC
Date Complaint Filed: 05/27/2010
Component(s): ENGINE AND ENGINE COOLING
Date of Incident: 05/27/2010
NHTSA ID Number: 10332491
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): JTKDE177670...
SUMMARY:
PURCHASE PRE-CERTIFIED/PRE-OWNED SCION TOYOTA, 2007, WITH 40,000 MILES
ON MAY 12, 2010 AND ON MAY 25, 2010 **OIL LIGHT BEGAN TO BLINK, LOST
POWER AND CONTROL OF CAR ON BUSY RAINY ROAD AND CAR STALLED,
PUTTING MY LIFE AT RISK.** BURNING SMELL AND BRAKES & STEERING WHEEL
LOCKED IN MIDDLE OF ROAD. UPDATED 06/03/10*BF **THE CONSUMER STATED
THE VEHICLE IS CURRENTLY IN THE SHOP WITH SERIOUS ENGINE DAMAGE**.
UPDATED IVOQ 06/07/10*JB

Vehicle: 2007 Scion tC
Date Complaint Filed: 06/11/2013
Component(s): ENGINE
Date of Incident: 06/05/2013
NHTSA ID Number: 10519398
Manufacturer: TOYOTA MOTOR CORPORATION
Vehicle Identification No. (VIN): JTKDE177X70...
SUMMARY:
**I PURCHASED MY CAR NEW FROM THE DEALERSHIP AND MY FIRST OIL
CHANGES I WENT TO THE DEALERSHIP BECAUSE OF OIL CONSUMPTION AND
THEY SAID IT WAS NORMAL FOR THE CAR TO USE 1 QUART FOR EVERY 1200
MILES. EVERY MECHANIC I HAVE SPOKEN TO SAID TO ME THAT IS NOT
NORMAL FOR A NEW CAR USED FOR DAILY DRIVING.** NOW I'M AT 73K MILES
AND I HAVE RECORDS OF EVERY OIL CHANGE BEING DONE AT EVERY 3K MILES
AND BETWEEN OIL CHANGES I HAVE TO PUT IN AT LEAST 4 TO 5 QUARTS IN
BETWEEN AND NOW I HAVE A ROD KNOCK SOUNDS LIKE A BEARING DUE TO NO
OIL IN THE CAR WHEN I CHECKED RIGHT BEFORE MY NEXT OIL CHANGE. **I
RESEARCHED THE INTERNET AND REALIZED THAT THIS IS VERY COMMON
AND TOYOTA IS AWARE OF THE OIL CONSUMPTION ISSUE ON THESE
ENGINES BUT HAS NOT ISSUES A RECALL JUST A TSB. SINCE THE ENGINE
BURNED OIL SO THAT IT WAS EMPTY I BELIEVE THAT IS A PRODUCT DEFECT
(COVERED UNDER WARRANTY) AND THE TSB SHOWS THAT ITS A PISTON ROD
BEARING ISSUE IN THE 2AZ-FE ENGINE.** I ALSO BELIEVE THAT TOYOTA IS
TAKING ADVANTAGE OF THE CONSUMER BY STATING THAT IT IS NORMAL TO
HAVE 1QUART OF OIL LOSS PER EVERY 600-1200 MILES. THAT DOES NOT EVEN

-26-

CLASS ACTION COMPLAINT
CASE No.:

MAKE SENSE FOR A NEW CAR WITH A MODERN ENGINE AND ITS IN THE USERS MANUAL. THIS IS HAPPENING TO ALOT OF PEOPLE AND ITS BETWEEN 50K TO 100K MILES WHEN THE WARRANTY EXPIRES. BECAUSE OF THIS THE TOYOTA DEALERSHIP TOLD ME THAT I NEED A NEW ENGINE AND THEY WONT HELP ME. **THEY ARE MAKING MONEY FROM THIS ENGINE DEFECT AND ARE TAKING FULL ADVANTAGE OF IT WITHOUT PLACING A RECALL ONLY A TSB.** REFERENCES: HTTP://WWW.RAV4WORLD.COM/FORUMS/96-4-3-GENERAL/68762-RAV-DRINKING-OIL.HTML HTTP://WWW.SCIONLIFE.COM/FORUMS/SHOWTHREAD.PHP?T=209859 HTTP://WWW.SCIONLIFE.COM/FORUMS/SHOWTHREAD.PHP?T=123401. *TR

117.   The timing of the aforementioned NHTSA complaints clearly establishes that Toyota had knowledge of the Oil Consumption Defect for nearly all of the Class Vehicles at the time of sale.  Upon information and belief, Toyota regularly monitors these NHSTA databases as part of its ongoing obligation to identify potential defects in its vehicles.  NHTSA complaints establish that Toyota knew, or should have known, of the Oil Consumption Defect *at least* as early as April 10, 2008.  Upon information and belief, Defendants' became aware of the Oil Consumption Defect earlier than April 2008 through: (1) Defendants' own records of customers' complaints, (2) dealership repair records, (3) records from NHTSA, (4) warranty and post-warranty claims, (5) durability testing, and (6) other various sources.[8]

## CLASS ALLEGATIONS

118.   Plaintiffs bring this action on their own behalf, and on behalf of the following Classes pursuant to FED. R. CIV. P. 23(a), 23(b)(2), and/or 23(b)(3).  Specifically, the Classes consist of each of the following:

**California Class:**
All persons or entities in California who are current or former owners and/or lessees of a Class Vehicle.

**Florida Class**:
All persons or entities in Florida who are current or former owners and/or lessees of a Class Vehicle.

---

[8] Plaintiffs will be able to pinpoint the exact time of Toyota's knowledge of the Oil Consumption Defect after engaging in discovery.

CLASS ACTION COMPLAINT
CASE NO.:

**Washington Class**:
All persons or entities in Washington who are current or former owners and/or lessees of a Class Vehicle.

**New York Class**:
All persons or entities in New York who are current or former owners and/or lessees of a Class Vehicle.

**New Jersey Class**:
All persons or entities in New Jersey who are current or former owners and/or lessees of a Class Vehicle.

119.    Together, the California Class, Florida Class, Washington Class, New York Class, and New Jersey Class shall be collectively referred to herein as the "Class."  Excluded from the Class are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case.  Plaintiffs reserve the right to modify, change, or expand the Class definition.

120.    <u>Numerosity</u>:  Upon information and belief, the Class is so numerous that joinder of all members is impracticable.  While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in each of the States that are the subject of the Class.

121.    <u>Existence and Predominance of Common Questions of Fact and Law:</u> Common questions of law and fact exist as to all members of the Class.  These questions predominate over the questions affecting individual Class members.  These common legal and factual questions include, but are not limited to:

      a.  whether the 2AZ-FE engines in the Class Vehicles are predisposed to the Oil Consumption Defect;

      b.  whether the 2AZ-FE engines in the Class Vehicles contain a design defect;

      c.  whether the defective engine design is common to all or some of the Class Vehicles;

      d.  if so, whether the Oil Consumption Defect causes the excessive oil consumption in the Class Vehicles;

-28-

CLASS ACTION COMPLAINT
CASE NO.:

e.   whether Defendants knowingly failed to disclose the existence and cause of the Oil Consumption Defect in the Class Vehicles;

f.   whether Defendants' conduct violates the California Legal Remedies Act, California Unfair Competition Law, and the other statutes asserted herein;

g.   whether, as a result of Defendants' omissions and/or misrepresentations of material facts related to the Oil Consumption Defect, Plaintiffs and members of the Class have suffered an ascertainable loss of monies and/or property and/or value; and

h.   whether Plaintiffs and Class members are entitled to monetary damages and/or other remedies, and, if so, the nature of any such relief.

122.   <u>Typicality</u>:  All of the Plaintiffs' claims are typical of the claims of the Class since each Plaintiff purchased a Class Vehicle with the Oil Consumption Defect, defective vehicle design, and defective engine, as did each member of the Class.  Furthermore, Plaintiffs and all members of the Class sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

123.   <u>Adequacy</u>:  All of the Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Class that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

124.   <u>Superiority</u>:  A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far

CLASS ACTION COMPLAINT
CASE NO.:

fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints.

125.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final equitable relief with respect to the Class as a whole.

## VIOLATIONS ALLEGED

### FIRST CAUSE OF ACTION
### VIOLATIONS OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT
### ("CLRA") (CAL. CIV. CODE § 1750, *et seq.*)
### (On Behalf of the California Class)

126.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

127.    Plaintiffs Lax and Medland ("Plaintiffs" for the purposes of this Count) bring this claim on behalf of themselves and on behalf of the members of the California Class against all Defendants.

128.    Defendants are "persons" as that term is defined in CAL. CIV. CODE § 1761(c).

129.    Plaintiffs and the Class are "consumers" as that term is defined in CAL. CIV. CODE §1761(d).

130.    Defendants engaged in unfair and deceptive acts in violation of the CLRA by the practices described above, and by knowingly and intentionally concealing from Plaintiffs and Class members that the Class Vehicles suffer from a design defect (and the costs, risks, and diminished value of the vehicles as a result of this problem).  These acts and practices violate, at a minimum, the following sections of the CLRA:

(a)(2) Misrepresenting the source, sponsorship, approval or certification of goods or services;

(a)(5) Representing that goods or services have sponsorships, characteristics, uses, benefits or quantities which they do not have, or that a person has a sponsorship, approval, status, affiliation or connection which he or she does not have;

(a)(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are

CLASS ACTION COMPLAINT
CASE NO.:

of another; and

(a)(9) Advertising goods and services with the intent not to sell them as advertised.

131.     Defendants' unfair or deceptive acts or practices occurred repeatedly in Defendants' trade or business, were capable of deceiving a substantial portion of the purchasing public, and imposed a serious safety risk on the public.

132.     Defendants knew that their Class Vehicles and their engines were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

133.     Defendants were under a duty to Plaintiffs and the Class members to disclose the defective nature of the Class Vehicles and the Oil Consumption Defect because:

a.    Defendants were in a superior position to know the true state of facts about the safety defect and associated repair costs in the Class Vehicles and their engines;

b.    Plaintiff and the Class members could not reasonably have been expected to learn or discover that the Class Vehicles and their engine had a dangerous safety defect until manifestation of the defect; and

c.    Defendant knew that Plaintiffs and the Class members could not reasonably have been expected to learn or discover the safety and security defect and the associated repair costs that it causes until the manifestation of the defect.

134.     In failing to disclose the Oil Consumption Defect and the associated safety risks and repair costs that result from it, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

135.     The facts concealed or not disclosed by Defendants to Plaintiff and the Class members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase Defendants' Class Vehicles or pay a lesser price.  Had Plaintiffs and the Class known about the defective nature of the Class Vehicles and their engines, they would not have purchased the Class Vehicles or would have paid less for them.

136.     As a direct and proximate result of Defendants' unfair or deceptive acts or practices, Plaintiffs and the Class members have suffered and will continue to suffer actual harm.

137.     Plaintiffs seek injunctive relief available under the CLRA.

CLASS ACTION COMPLAINT
CASE NO.:

## SECOND CAUSE OF ACTION
### VIOLATIONS OF THE CALIFORNIA BUSINESS AND PROFESSIONS CODE
#### (CAL. BUS. & PROF. CODE § 17200)
#### (On Behalf of the California Class)

138.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

139.    Plaintiffs Lax and Medland ("Plaintiffs" for purposes of this Count) bring this claim on behalf of themselves and on behalf of the members of the California Class against all Defendants.

140.    The California Unfair Competition Law ("UCL") prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

141.    Defendants have engaged in unfair competition and unfair, unlawful or fraudulent business practices by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiffs and the Class members that the Class Vehicles suffer from a design defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem). Defendants should have disclosed this information because they were in a superior position to know the true facts related to this design defect, and Plaintiffs and Class members could not reasonably be expected to learn or discover the true facts related to this defect.

142.    The Oil Consumption Defect constitutes a safety issue that triggered Toyota's duty to disclose the safety issue to consumers.

143.    These acts and practices have deceived Plaintiffs and are likely to deceive the public. In failing to disclose the design defect and suppressing other material facts from Plaintiffs and the Class members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and the Class members. The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiffs and Class members, as it would have been to all reasonable consumers.

144.    The injuries suffered by Plaintiffs and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.

-32-

145.   Defendants' acts and practices are unlawful because they violate CAL. CIV. CODE §§ 1668, 1709, 1710, and 1750 *et seq.*, and CAL. COMM. CODE § 2313.

146.   Plaintiffs seek to enjoin further unlawful, unfair and/or fraudulent acts or practices by Defendants, to obtain restitutionary disgorgement of all monies and revenues generated as a result of such practices, and all other relief allowed under CAL. BUS. & PROF. CODE § 17200.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT (FLA. STAT. § 501.201, *et seq.*)
### (On Behalf of the Florida Class)

147.   Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

148.   Plaintiff Sanders ("Plaintiff" for purposes of this Count) brings this claim on behalf of herself and the Florida Class.

149.   Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).

150.   In the course of Toyota's business, it willfully failed to disclose and actively concealed the dangerous risk of the Oil Consumption Defect in the Class Vehicles as described above. Accordingly, Toyota engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in FLA. STAT. § 501.204(1), including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

151.   Toyota's actions set forth above occurred in the conduct of trade or commerce.

152.   Toyota's conduct proximately caused injuries to Plaintiff and other Class members.

153.   Toyota, by the conduct, statements, and omissions described above, and by knowingly and intentionally concealing from Plaintiff and the Class members that the Class Vehicles suffer from a design defect (and the costs, safety risks, and diminished value of the vehicles as a result of this problem). Defendants should have disclosed this information because they were in a superior position to

-33-

know the true facts related to this design defect, and Plaintiff and Class members could not reasonably be expected to learn or discover the true facts related to this defect.

154.     The Oil Consumption Defect constitutes a safety issue that triggered Toyota's duty to disclose the safety issue to consumers.

155.     These acts and practices have deceived Plaintiff and is likely to deceive the public.  In failing to disclose the design defect and suppressing other material facts from Plaintiff and the Class members, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiff and the Class members.  The omissions and acts of concealment by Defendants pertained to information that was material to Plaintiff and Class members, as it would have been to all reasonable consumers.

156.     The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiffs and the Class members should have reasonably avoided.

157.     Plaintiff and the other Class members were injured as a result of Toyota's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Toyota's misrepresentations and omissions.

### FOURTH CAUSE OF ACTION
### VIOLATIONS OF THE WASHINGTON CONSUMER PROTECTION ACT
### (WASH. REV. CODE ANN. § 19.86.010, *et seq.*)
### (On Behalf of the Washington Class)

158.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

159.     Plaintiff Norris ("Plaintiff" for the purposes of this Count) brings this claim on behalf of herself and the Washington Class.

160.     The Washington Consumer Protection Act ("WCPA") makes unlawful to commit "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  WASH. REV. CODE ANN. § 19.86.020.  The WCPA provides a private right of action for

-34-

"[a]ny person who is injured in his or her business or property" by violations of the Act. WASH. REV. CODE ANN. § 19.86.090.

161.    Defendants have engaged in unfair competition and, unfair, unlawful or fraudulent business practices by the practices described above, and by knowingly and intentionally concealing from Plaintiff and Class members the Class Vehicles suffer from a design defect (and the costs, risks, and diminished value of the vehicles as a result of this problem). Defendants should have disclosed this information because they were in a superior position to know the true facts related to this design defect, and Plaintiff and the Class members could not reasonably be expected to learn or discover the true facts related to this defect.

162.    These unfair methods of competition and unfair and deceptive acts have caused injuries to Plaintiff and members of the Class.

163.    The injuries suffered by Plaintiff and the Class members are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class members should have reasonably avoided

164.    Plaintiff and the other Class members were injured as a result of Toyota's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value. These injuries are the direct and natural consequence of Toyota's misrepresentations and omissions.

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
#### (N.Y. GEN. BUS. LAW. § 349)
#### (On Behalf of the New York Class)

165.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

166.    Plaintiff Jones ("Plaintiff" for the purposes of this Count) brings this claim on behalf of himself and the New York Class.

167.    New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

CLASS ACTION COMPLAINT
CASE NO.:

168.     In the course of Toyota's business, it willfully failed to disclose and actively concealed the dangerous risk of the Oil Consumption Defect in the Class Vehicles as described above. Accordingly, Toyota engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices, including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

169.     Toyota's actions set forth above occurred in the conduct of trade or commerce.

170.     Because Toyota's deception takes place in the context of automobile safety, its deception affects the public interest.  Further, Toyota's unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers, and that have a broad impact on consumers at large.

171.     Toyota's conduct proximately caused injuries to Plaintiff and the other Class members.

172.     Plaintiff and the other Class members were injured as a result of Toyota's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Toyota's misrepresentations and omissions.

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**(N.Y. GEN. BUS. LAW § 350)**
**(On Behalf of the New York Class)**

173.     Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

174.     Plaintiff Jones ("Plaintiff" for the purposes of this Count) brings this claim on behalf of himself and the New York Class.  New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]"  False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of …representations [made] with respect to the commodity…." N.Y. GEN. BUS. LAW § 350-a.

175.     Toyota caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or

-36-

which by the exercise of reasonable care should have been known to Toyota, to be untrue and misleading to consumers, including Plaintiff and the other Class members.

176. Toyota has violated N.Y. GEN. BUS. LAW § 350 because the misrepresentations and omissions regarding the dangerous risk of the Oil Consumption Defect in the Class Vehicles as described above which was material and likely to deceive a reasonable consumer.

177. Plaintiff and the other Class members have suffered injury, including the loss of money or property, as a result of Toyota's false advertising. In purchasing or leasing their Class Vehicles, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Toyota with respect to the safety, quality, functionality, and reliability of the Class Vehicles. Toyota's representations turned out to be untrue because the Oil Consumption Defect renders the Class Vehicles prone to causing premature wear of internal parts, inadequate performance, and/or catastrophic engine failure, and other failures as described hereinabove. Had Plaintiff and the other Class members known this, they would not have purchased or leased their Class Vehicles and/or paid as much for them.

178. Accordingly, Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of the bargain for their Class Vehicles, which have also suffered diminution in value.

179. Plaintiff, individually and on behalf of the other Class members, requests that this Court enter such orders or judgments as may be necessary to enjoin Toyota from continuing its unfair, unlawful and/or deceptive practices. Plaintiff and the other Class members are also entitled to recover their actual damages or $500, whichever is greater. Because Toyota acted willfully or knowingly, Plaintiff and the other Class members are entitled to recover three times actual damages, up to $10,000.

### SEVENTH CAUSE OF ACTION
### VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT
#### (N.J. STAT. ANN. § 56:8-1, *et seq.*)
#### (On Behalf of the New Jersey Class)

180. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth and length herein.

181. Plaintiff Buschmann ("Plaintiff" for purposes of this Count) brings this claim on behalf of herself and the New Jersey Class.

CLASS ACTION COMPLAINT
CASE NO.:

182. The New Jersey Consumer Fraud Act, N.J. STAT. ANN. §§ 56:8-1, *et seq.* ("NJCFA") prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce.

183. In the course of Toyota's business, it willfully failed to disclose and actively concealed the dangerous risk of the Oil Consumption Defect in the Class Vehicles as described above. Accordingly, Toyota has engaged in unfair and deceptive trade practices, including representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent to not sell them as advertised; and otherwise engaging in conduct likely to deceive. Further, Toyota's acts and practices described herein offend established public policy because the harm they cause to consumers, motorists, and pedestrians outweighs any benefit associated with such practices, and because Toyota fraudulently concealed the defective nature of the Class Vehicles from consumers.

184. Toyota's actions as set forth above occurred in the conduct of trade or commerce.

185. Plaintiff and the other Class members were injured as a result of Toyota's conduct in that Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles suffered a diminution in value.

186. A causal relationship exists between Defendants' unlawful conduct and the ascertainable losses suffered by Plaintiff and the Class. Had the defective vehicle design in the Class vehicles been disclosed, consumers would not have purchased them or would have paid less for the Class vehicles had they decided to purchase them.

187. Pursuant to N.J. STAT. ANN. § 56:8-20, Plaintiff will serve the New Jersey Attorney General with a copy of this Complaint.

**EIGHTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of each of the State Classes)**

188. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

189. Defendants expressly warranted that the Class Vehicles were of high quality and, at minimum, would actually work properly. Defendants also expressly warranted that they would repair

-38-

and/or replace defects in material and/or workmanship free of charge that occurred during the new vehicle and certified pre-owned ("CPO") warranty periods.

190.    Plaintiffs relied on Toyota's express warranty when purchasing their Class Vehicles.

191.    Defendants breached this warranty by selling to Plaintiffs and the Class members the Class Vehicles with known engine oil consumption problems, which are not of high quality, and which are predisposed to fail prematurely and/or fail to function properly.

192.    As a result of Defendants' actions, Plaintiffs and the Class members have suffered economic damages including, but not limited to, costly repairs, loss of vehicle use, substantial loss in value and resale value of the vehicles, and other related damage.

193.    Defendants' attempt to disclaim or limit these express warranties vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.  Specifically, Defendants' warranty limitation is unenforceable because they knowingly sold a defective product without informing consumers about the defect.

194.    The time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class.  Among other things, Plaintiffs and Class members had no meaningful choice in determining these time limitations the terms of which unreasonably favored Defendants.  A gross disparity in bargaining power existed between Toyota and the Class members, and Toyota knew or should have known that the Class Vehicles were defective at the time of sale and would fail well before their useful lives.

195.    Plaintiffs and the Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

### NINTH CAUSE OF ACTION
### COMMON LAW FRAUD
### (On Behalf of each of the State Classes)

196.    Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

197.    Defendants made material omissions concerning a presently existing or past fact.  For example, Defendants did not fully and truthfully disclose to its customers the true nature of the inherent

CLASS ACTION COMPLAINT
CASE NO.:

design defect with the 2AZ-FE engine that causes the Oil Consumption Defect, which was not readily discoverable until years later, often after the warranty has expired. As a result, Plaintiffs and the other Class members were fraudulently induced to lease and/or purchase the Class Vehicles with the said design defects and all of the resultant problems.

198. These omissions were made by Defendants with knowledge of their falsity, and with the intent that Plaintiffs and the Class members rely on them.

199. Plaintiffs and the Class members reasonably relied on these omissions, and suffered damages as a result.

**TENTH CAUSE OF ACTION**
**BREACH OF THE DUTY OF GOOD FAITH AND FAIR**
**DEALING**
**(On Behalf of each of the State Classes)**

200. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

201. Every contract in New Jersey, California, Florida, Washington, and New York contains an implied covenant of good faith and fair dealing. The implied covenant of good faith and fair dealing is an independent duty and may be breached even if there is no breach of a contract's express terms.

202. Defendants breached the covenant of good faith and fair dealing by, *inter alia*, failing to notify Plaintiffs and Class members of the Oil Consumption Defect in the Class Vehicles, and failing to fully and properly repair this defect.

203. Defendants acted in bad faith and/or with a malicious motive to deny Plaintiffs and the Class members some benefit of the bargain originally intended by the parties, thereby causing them injuries in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION**
**THE SONG-BEVERLY ACT – BREACH OF IMPLIED WARRANTY**
**VIOLATIONS OF CALIFORNIA CIVIL CODE §§ 1792, 1791.1, *et seq.***
**(On Behalf of the California Class)**

204. Plaintiffs and the Class incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

CLASS ACTION COMPLAINT
CASE NO.:

205.   Plaintiffs Lax and Medland ("Plaintiffs" for purposes of this Count) bring this claim on behalf of themselves and the California Class.

206.   At all relevant times hereto, Defendants were the manufacturers, distributors, warrantors, and/or sellers of the Class Vehicles.  Defendants knew or should have known of the specific use for which the Class Vehicles were purchased.

207.   Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles, and any parts thereof, are merchantable and fit for the ordinary purposes for which they were sold.  The Class Vehicles, however, are not fit for their ordinary purpose because, *inter alia*, the Class Vehicles and their engines suffered from an inherent defect at the time of sale that causes the Class Vehicles to consume an abnormal and excessive amount of oil.

208.   The Class Vehicles are not fit for the purpose of providing safe and reliable transportation because of the Oil Consumption Defect.

209.   Defendants impliedly warranted that the Class Vehicles were of merchantable quality and fit for such use.  This implied warranty included, *inter alia*, the following: (i) a warranty that the Class Vehicles and their engines were manufactured, supplied, distributed, and/or sold by Toyota were safe and reliable for providing transportation and would not consume abnormal and excessive amounts of oil between scheduled oil changes; and (ii) a warranty that the Class Vehicles and their engines would be fit for their intended use – providing safe and reliable transportation – while the Class Vehicles were being operated.

210.   Contrary to the applicable implied warranties, the Class Vehicles and their engines at the time of sale and thereafter were not fit for their ordinary and intended purpose.  Instead, the Class Vehicles are defective, including, but not limited to, the defective design and/or manufacture of the 2AZ-FE engines that cause the Oil Consumption Defect.

211.   Defendants' actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of CAL. CIV. CODE §§ 1792 and 1791.1.

CLASS ACTION COMPLAINT
CASE NO.:

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and members of the Class, respectfully requests that this Court:

A.  determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying one or more Classes as defined above;

B.  appoint Plaintiffs as the representatives of the Class and their counsel as Class counsel;

C.  award all actual, general, special, incidental, statutory, punitive, and consequential damages and restitution to which Plaintiffs and the Class members are entitled (though such damages are not currently sought under the CLRA claim);

D.  award pre-judgment and post-judgment interest on such monetary relief;

E.  grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class Vehicles and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the design defect;

F.  award reasonable attorneys' fees and costs; and

G.  grant such further relief that this Court deems appropriate.

Dated:  March 31, 2014.

Respectfully submitted,
MCCUNEWRIGHT LLP

By:   /s/ Richard D. McCune
Richard D. McCune
Attorneys for Plaintiffs and Putative Class

### JURY DEMAND

Plaintiffs, on behalf of themselves and the putative Class, demand a trial by jury on all issues so triable.

MCCUNEWRIGHT LLP

By:   /s/ Richard D. McCune
Richard D. McCune
Attorneys for Plaintiffs and Putative Class

-42-

CLASS ACTION COMPLAINT
CASE NO.: